Your Honor, the second case of the morning called 208-1097, People in the State of Illinois v. Farrar v. Kiasi. On behalf of the appellant, Ms. Margaret M. O'Connell, on behalf of the appellee, the Superior Justice Judges. Good morning, Counsel. Ms. O'Connell. Good morning. May it please the Court, Counsel, my name is Margaret O'Connell and I am the attorney representing Farrar v. Kiasi. I'm here today to ask this Court to reverse the conviction and the sentence for Mr. Kiasi. As the Court is aware, my client was charged with two counts of being an organizer of a continuing financial crimes enterprise and two counts of forgery. It should be noted that the second count of forgery was charged on a theory of accountability. The initial argument and probably what we consider to be our strongest argument would be that the offense of being an organizer of a continuing financial crimes enterprise, the statute itself is violative of the proportionate penalties clause of the Illinois Constitution and due process and is unconstitutionally vague. Without reciting too much of what is already written in my brief, it is our position that since no overt act is required in the statute and the penalty is that for a Class X felony, that it is too harsh. The example that is made in the brief relates to the general offense of conspiracy and particularly to the offense of conspiracy to commit a financial crime. Now, Counsel, those crimes don't require the same identical elements, isn't that correct? That is true. That you're comparing? That's true. And doesn't Sharp tell us that we can no longer do the cross comparison test in the analysis of whether there's been a violation of the proportionate penalties clause? Yes. So isn't that what you've done in your argument here, in your analysis? That was part of the analysis, yes. The other, I'm sorry. So we should not be looking at this with the cross comparison test then. If we can't use that test, then what other argument do you have that this was violative of the Constitution? That it is a violation of due process in that the penalty is so severe that it is shocking to the moral conscience of the community. And how is that? Can you elaborate on that, please? As stated in our brief, the fact that no overt act is required and merely the meeting of the minds as far as three separate acts should not be sufficient to send someone to a mandatory term in the Illinois Department of Corrections. The second argument that we make in our brief relates to the denial of Mr. Chiazzi's constitutional right to confront witnesses against him, particularly as it pertains to Kimberly Lebo. As is noted in our statement of facts, Kimberly Lebo and Mr. Young both cooperated with the state and did receive lenient sentences for a term of probation. During the case, the state's theory was that Mr. Chiazzi had taken advantage of young innocent people, particularly Lebo and Young. And it was during cross-examination in the trial that it was discovered that Lebo was previously engaged in a job which required her to promote nightclubs by bringing people into the club. And how did that affect her credibility? Wasn't there other cross-examination that the trial court allowed that in which she repeatedly admitted she had lied, used false identification, she admitted she was testifying pursuant to an agreement with the state? Sure. I mean, how did it deny the defendant's right to cross-examination when the trial judge said that this other questioning wasn't relevant to the issues? Well, I think that it certainly, I think that the testimony that Lebo gave as it relates to her actions, which she testified were at the behest of Mr. Chiazzi, as Your Honor mentioned, differ from these other actions which occurred prior to her meeting Mr. Chiazzi and certainly flew in the face of the state's theory that she was an innocent person who was basically taken in by my client and taken advantage of in order to commit these crimes. Had the jury been able to hear that prior to meeting Mr. Chiazzi that this witness had engaged in other, perhaps not rising to the level of criminal conduct, but certainly conduct that would have impaired her credibility had the trial court allowed that further cross-examination, that that would have had an effect with the jury when they went back to deliberate and to make a determination as to the credibility of Lebo's testimony. So you're saying being a club promoter, her job as a club promoter would have affected the jury's view of her credibility? No, I'm saying that if the trial court had allowed further cross-examination as to what that job entailed, that that would have had an effect with the jury. But that had nothing to do with her contact or interaction with the defendant, did it? Correct. Which is why if you take her testimony that she was taken in by Mr. Chiazzi, that she was an innocent victim, but if we were able to show that she wasn't as innocent as she claimed and that she had engaged in other, perhaps not criminal conduct, but certainly conduct which would have affected her credibility, that would have had an effect with the jury. Had we been able to show that she was in fact scamming other individuals for her own personal gain and also we were not allowed to inquire any further as to what conduct she may have engaged in while she was engaging in this job of promoting nightclubs. Did we have an offer of proof on what that other conduct was? The record did not make an offer of proof as to that. So we don't know. You're speculating that if we knew these other things, it might have helped. It might have helped the defendant. Yes. All right. Why is this issue collateral? I'm having a hard time seeing how this really relates to. Why is this inquiry into a club promoter not a collateral issue, which is not subject to inquiry? Oh, I think that because it could have. It could have rose to the level of possible criminal conduct had we been allowed to do that, that it would not be a collateral issue. It would rise to a criminal. It could have. Yes. Are you saying that club promoter is a generic term that infers criminality? No. I'm saying that the conduct that she may have engaged in in doing that job may have had an element of criminality in it. And how are we supposed to know this without an offer of proof? I don't disagree that trial counsel should have done an offer of proof, but the record is silent as to an offer of proof. Counsel, on another point, you contended in your brief that the trial court committed error in giving IPI 1.014. That is that the jury should not consider punishment. Correct. Because McAnally's reference, the detective's reference to a Class X felony did not raise the issue of punishment. Yes. Why was this error when punishment was brought up or certainly the classification of an offense during the testimony? And how did this prejudice the defendant? Well, this is one of the – I think that it prejudiced the defendant because a juror who hears the term Class X felony doesn't necessarily equate that with a higher degree of punishment. The record is silent as to any punishment attached with a Class X felony or the range of penalties for a Class X felony. So it's our position that that IPI should not have been given. A complete read of the record shows that initially trial counsel didn't want the instruction. He said that he would then err on the side of being cautious and gave it, and agreed to give it. Then when – prior to the jury being instructed, sought to waive the inclusion, and it was at that point that the state wanted that instruction to come in. So I think that it was unfair to allow the state to require that instruction to be read when the testimony of the detective didn't mention any form of penalty. Well, how was the defendant harmed by it? Because it interjected that idea with the jury, and that was not – The instruction didn't? That's not the thrust of the instruction, is it? The instruction is just the opposite. It's instructing the jury not to consider punishment. Correct. The instruction itself does say that. Right. But had that instruction not been given, the jury would – Then the jury would have just been left with the Class X reference to the crime? Yes, which I – To a Class X felony, actually, wasn't it? Class X felony. Yes, that is the detective's testimony. But for a layperson, a Class X felony doesn't mean the same thing that it means to us. To us, it's a mandatory penitentiary sentence. To someone who's sitting on the jury, they don't really know what penalty is attached to that. But they do know it refers to punishment, I would assume. Common sense would tell a layperson that that, in the context of the testimony here, that that would refer to punishment, correct? I disagree. I thought it was when the detective testifies, he's talking about what it is he wants my client to admit to, and we were touching to get him to admit to committing a Class X felony. So it was the – it relates, in my eyes, more back to the charge that they were going to be able to proffer against – or to pursue against my client as opposed to the punishment that they were ultimately going to seek. So I think it's just a question of what a layperson would determine or deem that terminology to mean. The last argument that I'd like to touch on is the ineffective assistance of trial counsel. As argued in our brief, it is clear that trial counsel was ineffective in numerous ways. We're asking this Court to look at counsel's performance under, obviously, the totality of the circumstances and the numerous errors made by trial counsel both during the trial itself and in proceeding with the initial post-trial motion in this matter. Particularly one item not mentioned here this morning is defense counsel's ineffectiveness in failing to impeach Gary Young. Gary Young was the other co-defendant who cooperated with the state and received a disposition of probation. Defense counsel never questions Mr. Young correctly regarding his prior criminal conduct and prior criminal conviction. He never brings up the fact that Mr. Young was, in fact, convicted of burglary back in California. Additionally, he doesn't properly question Mr. Young as to Mr. Young's initial thoughts as to why it is he's coming to Chicago, which was to be a bodyguard and help open up a restaurant or bar. And then somehow we get into this whole, when he gets to Chicago that he's opening up the offices and the checking accounts and things like that. Had trial counsel been effective and more vigorously had cross-examined Mr. Young, it would have been shown to the jury that Mr. Young was not, in fact, an innocent victim here and that my client was not casting a spell over Mr. Young in order to commit these acts. How do you get from coming to Chicago to be a bodyguard for someone involved in a restaurant? Is implicitly criminal or, as you did, not innocent? I'm sorry, I don't understand how the reason for coming to a municipality, if it isn't for criminal activity, has any relevancy. And it's possible you might be correct in suggesting that somebody is coming here to commit crimes, that they're not as innocent as one might otherwise think. But there appears to be a missing link here between what the actual purpose was and establishing that that is in some way antisocial. If I said that it was criminal... You said not innocent. Ergo guilty? Ergo guilty of what? Maybe not a crime, maybe fraud, maybe misrepresentation. The inference is that it's criminal in nature. Otherwise, I don't see the point. No, if I said that, then I misspoke. What I meant to say was counsel should have been more effective in cross-examining Mr. Young as it related to what Mr. Young originally thought he was coming here for and then how it was that we got to the point where he was opening up these accounts and why it was that he thought that using fake names, using fake companies, and things like that were not wrong. It lacks credibility. It just doesn't add up. Thank you, counsel. You'll have an opportunity on rebuttal to make any additional points you'd like to cover. Mr. Jacobs? Good morning, Mary Jacobs, on behalf of DAPA League. May it please the Court and counsel. As counsel indicated, in this case, the defendant was actually found guilty, not discharged, with two counts of being the organizer of a continuing financial crimes enterprise and two counts of forgery. He was sentenced to a 12-year term of imprisonment on the charge of organizing a financial crimes enterprise. What is an organizer? I know what the charge says, but how is the jury to understand what this is? Based upon the very clear language, an organizer is someone who, in this case, well, an organizer is someone who, under the statute, intends to commit an offense and agrees with another party to the commission of the offense for three separate occurrences within an 18-month period and acts as the organizer, supervisor, financier, or manager of that offense. And so we use what? The circumstances under which it occurs? I guess I understand the concept of organizer, but to commit an offense? I mean, theoretically, this could have been an organization, a charitable organization that he was setting up. It could have been, but for the intent to commit an offense under the act. And how do we know that intent? And I think that's kind of the gist of counsel's argument, that it's how do we know? So what's the state's position? The state's position would be that it's based upon the agreement reached that with another party, it doesn't have to be the same party according to the statute, but with another party that an offense will be committed. The statute doesn't require that an offense actually be committed for a person to be found guilty of organizing, but he does have to agree to the commission of the offense. And intend to do so. The parties here, let's use Lebo and Mr. Young, by using fake IDs, this might be an indication of their agreement? Because we don't actually have anything in writing, we don't have, you know, so how are we getting there? We have the testimony of both Gary Johnson Young and Kimberly Lebo, indicating that they, through mutual, or separately, but they each had a friend who introduced them to the defendant using a fictitious identity he was at the time. They later identified the defendant in court, it was the defendant who proposed traveling to Chicago, who took them around to set up the offices at the HQ headquarters, also to register with the county, I think DuPage County obviously in this case, to register those businesses with DuPage County, and who provided the funds to open all of these accounts in fictitious names. Well how do we know that the businesses just didn't go bad? I mean, how do we know that they intended to do, to commit an offense, and it just ended up that these businesses they were setting up went bad? How do we know that the defendant intended? Right. My recollection of the evidence would be that the defendant provided all of the fake information, and I think that's how we would get to, and that's how a jury would arrive, that the defendant was not acting honestly to suggest that he had to use a fictitious name for a business because his wife might find out telling Kimberly Lebo that it was okay to use someone else's name because that person didn't really exist. I think all those things add to the duplicity which could be seen by the jury. Now isn't this a less serious crime than conspiracy to commit a financial crime, and yet being an organizer is a class X felony and has therefore a higher penalty, and isn't that violative of the proportionate penalties clause? As Your Honor indicated, Sharpe tells us that we can no longer use cross-comparison analysis for two different crimes with different elements. The conspiracy statute does have different elements than the organizer of the continuing criminal enterprise, and I would note that in the defendant's brief he really didn't do an identical elements analysis per se, but he did proceed under the cruel and degrading standard, arguing that the legislator couldn't have intended to penalize conduct that doesn't have an overt act more seriously than something that does. But I would submit that, as I do in my brief, that read in conjunction with the whole of the act, that was a very intent of the legislature to penalize someone who is the mastermind of a continuing financial crimes enterprise to penalize that conduct, and given the intricacies of such conduct, I believe that that was actually clearly expressed that the legislator left that out, that there be an overt act on the part of the organizer. That there be no overt acts? On the part of the organizer, other than the agreement, because... What's an overt act? An overt act would be actually performing a transaction in this case. An overt act is, it's hard to guess the common definition of overt, something that's obvious. It is giving someone tickets, airplane tickets to fly here, an overt act. It is an overt act. It's giving someone money to fund an account, an overt act? I mean... Of course. The appellant claims that a clear reading of the statute shows that it prohibits what is basically an expiracy without even the requirement of an overt act. And then she quotes the statute. And I thought her point was, and I'm being correct, that there was no requirement of an overt act in furtherance of the enterprise. Certainly, all of the acts that Your Honor describes are overt acts. They don't necessarily violate the provisions of... Well, how do you establish the occupation of organizer, supervisor, or financial or other position in management without establishing an overt act to infer that this person is what I just read? That would be established, although it doesn't, it's not... My point in brief is that it's not specifically required that the overt act be established. It would necessarily follow... Would it necessarily follow that you could establish an organizer, supervisor, financial or other position in management without an overt act? No. It's unlikely, I would think, that in this case there was fairly... Would putting a badge on oneself that says I'm the organizer or the manager, would that be an overt act? Probably not. Okay. In this case, the defendant here never actually went to a bank and opened an account. Is that correct? Not directly correct. All right. Did it through people? Did it through people. Through these innocent, as the State wanted to portray, these persons who were... He went out and found young, innocent persons who were looking for... Innocent or naive, yes. Yes, okay. So he never opened an office himself and signed a lease? He did not. There was testimony that with Kimberly Lebo on her first, I guess, outing, she became confused. She called someone who she said was a defendant, and he came up and did not actually fill out the paperwork, but did direct her in how to do so at HQ headquarters. And that may be the only time his face was seen at one of these... Yes, I don't believe there was any evidence that on any of the videotapes when the checks were presented that the defendant was among the people videotaped. However, his fingerprint did appear on a deposit ticket, I believe, from March 14, 2006. And that deposit ticket, I believe, was deposited by Gary Johnson Young, but it did bear his fingerprint. I think the statute relating to forgery says something to the effect of putting yourself forward as preparing or delivering a docket that is made by another. Made or altered, yes. Does the another have to be a real human being, or can it be a non-entity? The statute doesn't require that it be a human being, but made by another. Again, it's somewhat of a question of what could occur. Well, does Lebo claim that she wasn't doing anything wrong? Does she believe that she was not claiming to be someone who actually existed? Correct. Is there some rational basis to believe that that is a good faith belief? If the statute says made by another and the statute doesn't concern itself with whether or not that other individual exists or doesn't exist, would it be fair to say that Ms. Lebo totally misunderstood the concept of another? It would likely be fair to say. It doesn't really relate to the charge of forgery that this defendant was convicted of. Does it relate to her credibility? Of course, which was fronted during her information about her lying. She admitted to lying. She admitted to doing all of these things and receiving a sentence of probation on her forgery and identity theft convictions, as well as a favorable deal. What is your position relative to the failure of the court to allow inquiry concerning Ms. Lebo's vocation or advocation as a club promoter? My position is that the limitation on cross-examination because the inquiry should be what was actually allowed. And as I indicated, it was explored. Her credibility was explored with regard to lying and her honesty. So the state's position would be that it did not violate the confrontation clause. The court permitted adequate cross-examination. There was sufficient information from the fact finder to assess Kimberly Lebo. And the defendant's contention that by depriving him of the ability to cross-examine Ms. Lebo about her job as a club promoter is purely speculative. I believe Your Honor indicated it assumes that any club promoter is necessarily a dishonest person engaged in criminal activity. There was no offer of proof here what that testimony would have entailed. I'd also say that. Well, they wanted to question also about use of drugs and alcohol. Isn't that correct? Apparently. Again, whether or not that bears upon her credibility any more than her admission to lying, it's very speculative. The answer could have been no. There was no offer of proof. Is there any law that you're aware of that makes the consumption of alcohol and drugs a basis for impeachment as opposed to addiction for those items? I'm not aware of anything. It certainly would go to her credibility. But there was no testimony that any of the acts she committed, in this case, she was using drugs or alcohol. So it seems very collateral to the final question. I'm going to jump ahead to the court's inquiry about pattern instruction 101.4 that the defendant contends that the jury should not have been instructed after Sergeant McAnally indicated during testimony that he was trying to get the defendant to admit to a Class X felony. In this case, the defendant was charged with a Class X felony. And the corollary or the note for 1.014 indicates that it's meant to prevent consideration of extraneous information. The inference was that Sergeant McAnally was perhaps trying to get the defendant to admit to a more serious felony. So in this case, I believe it was appropriate for the court to instruct as such. Well, maybe the point is that he didn't say, well, you know, we were considering a Class 1234X, and we were trying to really get the X. He didn't say that. He didn't add the others. So there wasn't any confusion that the jury would have been under. All they would have heard was Class X felony. Right. So why draw additional attention to it in the instruction? Well, as I said, I believe the intent of the instruction is to prevent consideration of extraneous information. Just leaving the Class X felony out there, knowing that the defendant has already been charged with a Class X felony, I think raises the question in the jury's mind, making 1.014 an appropriate instruction in this case. The jury didn't know that he was charged with a Class X felony, that when you read an indictment, when the indictment is read, the judge does not read anything related to the class of the offense, correct, counsel? No, that's correct. However, it does raise the specter of some possibly more serious felony. And furthermore, the defendant doesn't indicate how he was prejudiced by this instruction. There's no harm. Okay. Thank you, counsel. Ms. O'Connell? I would not have any additional argument to make at this point, but certainly if there are any questions. Would the judge have made a better case for merely telling the jury to disregard Officer McAnally's statement concerning a Class X felony? And then, having done so, the instruction would have been either redundant or unnecessary, or both? If he had made that instruction to the jury, contemporaneous with the testimony being heard, and then I don't think that there would have been a need for the jury instruction. The jury instruction was initially brought to light by the trial court judge. It was not brought by either party, the state or the defense. So had he done that, yes, I think that it would have taken the bite out of it if it had been contemporaneous with the detective's testimony, and then there would have been no need for any additional instruction. And I think then that the judge wouldn't have brought it to anyone's attention as to whether or not the penalty aspect had been raised. He would have ordered to fuse that. You claim that the defendant should have been allowed to have his family testify, but I don't recall what you claim they would have said. Am I incorrect? The common law record does include the letters from his family members. I certainly can't recall the content of each of the letters. I think that the thrust of the argument is that when you look at what my client says the day that he's brought into the courtroom, he's uncertain as to whether or not. I think, I believe his words are that he wasn't 100% or he wasn't for sure that sentencing was even going to occur on that day. So I think that, again, that falls back into the argument of ineffective assistance and whether or not my client had the opportunity to gather up any additional litigation outside of the letters that he had from his family members. But there's no question that the trial judge was able to see those documents. That's true. Yes. The family members were in California, so it wasn't a question of, you know, can we have a couple of hours, Your Honor, and get them here. So. Thank you. Thank you very much, Counsel. Both of you, the court is very appreciative of your presence here today. And at this time, we'll take the matter under advisement and render a decision in due course. Court stands in brief recess. Thank you.